PEOPLE v CONN (ON REMAND)

Docket No. 118777. Submitted July 7, 1989, at Lansing. Decided January 16, 1990. Leave to appeal applied for.

Bobby S. Conn was convicted of first-degree criminal sexual conduct and, on his plea of guilty, of being a second felony habitual offender, Oakland Circuit Court, Norman L. Lippitt, J. Defendant appealed, alleging inter alia that the court erred in allowing the attending physician to testify to statements made by the seven-year-old victim. The Court of Appeals affirmed, 171 Mich App 55 (1988). Defendant sought leave to appeal and the Supreme Court, in lieu of granting leave to appeal, 432 Mich 914 (1989), remanded for reconsideration in light of *People v LaLone,* 432 Mich 103 (1989).

On remand, the Court of Appeals *held:*

Statements made by a patient to an examining physician as to the origin of the patient's symptoms are not admissible as an exception to the hearsay rule.

Reversed.

SAWYER, P.J., dissented. He would hold that statements of a child sexual abuse victim identifying the perpetrator are admissible where the statements are made to a physician during the course of a physical examination or treatment not a part of any police investigation of alleged sexual abuse and the perpetrator is a member of the victim's household or otherwise had ongoing unsupervised access to the victim. He would affirm.

EVIDENCE — HEARSAY — MEDICAL TREATMENT EXCEPTION — RULES OF EVIDENCE.

Statements made by a patient to an examining physician as to the origin of the patient's symptoms are not admissible as an exception to the hearsay rule (MRE 803[4]).

*Frank J. Kelley,* Attorney General, *Louis J.*

REFERENCES

Am Jur 2d, Evidence §§ 683, 685, 686.

Admissibility of physician's testimony as to patient's statements or declarations, other than res gestae, during medical examination. 37 ALR3d 778.

*Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Paul J. Fischer,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant.

ON REMAND

Before: SAWYER, P.J., and MICHAEL J. KELLY and DOCTOROFF, JJ.

DOCTOROFF, J. Following a jury trial, defendant was convicted of criminal sexual conduct in the first degree, MCL 750.520b; MSA 28.788(2). He thereafter pled guilty to being an habitual offender, second offense, MCL 769.10; MSA 28.1082. He was sentenced to serve twenty-five to eighty years in prison. Defendant appealed and we affirmed. *People v Conn,* 171 Mich App 55; 429 NW2d 839 (1988). Defendant thereafter applied for leave to appeal to the Supreme Court which, in lieu of granting leave, 432 Mich 914 (1989), remanded the matter to this Court for reconsideration in light of *People v LaLone,* 432 Mich 103; 437 NW2d 611 (1989).

In the original opinion we held, inter alia, that testimony by an attending physician concerning statements made by the victim to him during his examination of the victim were admissible under MRE 803(4). It is this issue which we must reconsider in light of *LaLone.*

In *LaLone,* the Court concluded that statements made to a psychologist during the course of a psychological examination following allegations of sexual abuse were not admissible under MRE 803(4). The Court's rationale was that the drafters of the court rule did not intend that the victim's

naming of her assailant should be considered a description of the general character of the cause or external source of an injury. *LaLone*, p 111. In reversing *LaLone*, the Court stated:

> The outcome of a child sexual abuse case is often decided by a credibility contest. The narrow and specific wording of MRE 803(4) represents an effort to balance the desire for additional evidence with the need to protect the accused from damaging hearsay. If indeed that balance needs to be shifted to allow nonmedical testimony describing statements of specific fault made after police investigations have begun, then it can best be done by amendment of the current rule. [432 Mich 117.]

*LaLone* is distinguishable from this case on two bases. First, the statement in *LaLone* was made to a psychologist rather than to a physician, a factor which, according to the Court, suggested that the statement may be less reliable. However, since complainant in this case is a seven-year-old child, the psychologist/physician distinction, for purposes of reliability, is irrelevant.

Second, in *LaLone*, the statement was made after the accusations had been brought and the investigation begun, and the Court reasoned that complainant would offer consistent statements to a psychologist. Complainant in *LaLone* was the defendant's fourteen-year-old stepdaughter. In *La-Lone*, the timing was, thus, a factor in the Court's decision. However, it was not dispositive. Further, we find that the Court's reasoning that complainant would offer consistent statements to a psychologist after the accusations were made is less applicable when the complainant is, as in this case, only seven years old.

We conclude that, even though this case deals with a physician and with statements made before

accusations had been made, *LaLone* compels our conclusion that defendant's conviction must be reversed. We note our deep regret that this child will have to endure a replay of defendant's trial. Indeed, that approaches a kind of abuse to which we are unwilling participants. However, we are bound by the Supreme Court's decision.

Reversed.

MICHAEL J. KELLY, J., concurred.

SAWYER, P.J. *(dissenting).* I respectfully dissent.

Unlike the majority, I believe that the distinctions between this case and *People v LaLone,* 432 Mich 103; 437 NW2d 611 (1989), are sufficient to warrant affirming defendant's conviction. There are two significantly differentiating features between *LaLone* and the instant case which make it necessary to carefully consider *LaLone* to determine its applicability to the case at bar. Specifically, in *LaLone* the hearsay statements were made by the victim to a psychologist while in the case at bar the statements were made to a physician. Second, in *LaLone* the victim had already made her allegations of sexual abuse and the statements were made to the psychologist at a meeting held pursuant to an order of the probate court. *LaLone, supra* at 115. In the case at bar, however, the statements were made by the victim during a physical examination and the sexual abuse had not been brought to the attention of the authorities. Indeed, it was during the physician's examination of the victim that the sexual abuse was disclosed, resulting in the authorities' being contacted.

With respect to the first distinction, that *LaLone* involved a psychologist rather than a physician, the fact that *LaLone* involved a psychologist can-

not be dismissed out of hand. Rather, the *LaLone* decision indicates that the Court was very much concerned with the fact that the victim's statements had been made to a psychologist during the course of a psychological evaluation or treatment. Indeed, one of the primary bases for the Court's decision was its belief that statements made to a psychologist are inherently less reliable than those made to a physician:

> A psychologist treats mental and emotional disorders rather than physical ones. Lying to one's health care provider about symptoms and their general causes would be detrimental to the patient, and it is, in part, for this reason that we permit the introduction of such hearsay statements. It is therefore fair to say that, while medical patients may fabricate descriptions of their complaints and the general character of the causes of these complaints, we would think it less likely that they will do so than psychological patients. In addition, although there are psychological tests, fabrications of physical complaints would seem to be far easier to discover through empirical tests than are fabrications which might be heard by an examining psychologist. Indeed, statements which are untrue, and which the examining psychologist knows to be untrue, may nevertheless serve as a basis for accurate diagnosis and treatment. Thus, statements made in the course of the treatment of psychological disorders may not always be as reliable as those made in the course of the treatment of physical disorders. [432 Mich 109-110.]

Moreover, the Court, in at least two other places in its opinion, found the need to specifically note that *LaLone* involved a psychologist. Specifically, the Court addressed its concern of broadening the nature of the exception contained in MRE 803(4) "particularly in the context of psychological treatment . . . ." *Id.* at 111. Second, in distinguishing

the decision in *United States v Renville*, 779 F2d 430 (CA 8, 1985), the Court again specifically noted that "the statements in this case were made to a psychologist rather than to a physician and this suggests that the statement by the victim in this case may be less reliable than a statement made to a physician." *LaLone, supra* at 113-114.

The second distinguishing feature is that the statements in *LaLone* were made after the accusations had been brought and an investigation begun, while the statements in the case at bar are what initiated the investigation. I again believe that these factors played a role in the Court's decision in *LaLone*.

Specifically, the *LaLone* Court noted that the complainant's meeting with the psychologist "occurred after she told police authorities that her stepfather had abused her and the investigation into the truth of those accusations had been initiated." *Id.* at 115. The Court further noted that that meeting between the psychologist and the victim "did not have the same measure of reliability as would even a normal psychological therapy session, since the complainant had already made the accusations and she was aware that a case against the defendant was being prepared." *Id.* Further, the Court noted that, if the defendant was correct that the victim had fabricated her story, "then surely once complainant had offered the story to the police, she would offer consistent statements to a psychologist." *Id.* Finally, in its conclusion, the plurality opinion notes that, if nonmedical testimony concerning statements of specific fault "made after police investigations had begun" should be admissible, then it can be best addressed by amendment of the evidentiary rules.[1]

---

[1] The fact that the court referred to nonmedical testimony on this

*Id.* at 117. Thus, I am of the opinion that the fact that the statements made by the victim in *LaLone* occurred after she had lodged her accusations with the authorities was an important consideration in the Supreme Court's decision.

I am not unmindful that the Supreme Court did not specifically limit its decision to statements made by a victim to a psychologist nor did the Court specifically draw a bright line between statements made before an investigation has begun and those statements made afterwards. Indeed, I acknowledge that many of the concerns expressed by the Court in *LaLone* would equally apply to statements made to a physician which constitute the child's first accusation of abuse as well as to statements made to a psychologist during the police investigation. However, I am also mindful that the purpose of a hearsay exception is to allow the introduction of statements which have a sufficient degree of reliability. *LaLone, supra* at 115. In the case at bar, the circumstances surrounding the victim's statements to the attending physician support a finding that those statements were more reliable than the circumstances present in *LaLone*. Specifically, in the case at bar, the victim's statements to the physician appear to be the first time she revealed the fact that she was being abused and were made despite her mother's urging that she ascribe her injuries to a bicycle accident or to a male baby-sitter. Furthermore, the victim's accusations were at least partially confirmed physically by the fact that she suffered from labial irritation. See *LaLone, supra* at 112.

While I am cognizant of the fact that the Supreme Court did not place as much reliance on the decision in *Renville, supra,* or the need of an

point also reinforces the first distinction of medical versus psychological testimony.

attending physician to ascertain the source of abuse in order to protect his patient from future abuse as this Court did in our initial opinion in this matter, I believe that the distinguishing features between the instant case and *LaLone* justify a conclusion that *LaLone* is not applicable to the case at bar. Accordingly, I would again hold that statements made by the victim of child sexual abuse identifying her abuser are admissible where, as here, (1) the statements are made to a physician, (2) are made during the course of a physical examination or treatment not a part of any police investigation of alleged abuse, and (3) the abuser is a member of the victim's household or otherwise had ongoing, unsupervised access to the victim.[2] I would affirm.

---

[2] Of course, a trial court would also have to consider any other factors which might affect the reliability of the statements, such as a suggestion to the child to make a particular statement to the physician.